IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JUSTIN SWARTZ, | : Civil No. 1:24-CV-688 |
| | : |
| Plaintiff, | : |
| | : |
| v. | : |
| | : (Chief Magistrate Judge Bloom) |
| LELAND DUDEK, Acting | : |
| Commissioner of Social Security,[1] | : |
| | : |
| Defendant. | : |

## MEMORANDUM OPINION

### I. Introduction

Justin Swartz filed an application under Title II of the Social Security Act for disability and disability insurance benefits on June 23, 2021. Following a hearing before an Administrative Law Judge ("ALJ"), the ALJ found that Swartz was not disabled from his alleged onset date of November 2, 2018, through April 13, 2023, the date of the ALJ's decision.

---

[1] Leland Dudek became the Acting Commissioner of the Social Security Administration on February 19, 2025. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure and 42 U.S.C. § 405(g), Leland Dudek is substituted as the defendant in this suit.

Swartz now appeals this decision, arguing that the ALJ's decision is not supported by substantial evidence.  After a review of the record, and mindful of the fact that substantial evidence "means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion,'" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019), we conclude that substantial evidence supports the ALJ's findings in this case.  Therefore, we will affirm the decision of the Commissioner denying this claim.

## II.    Statement of Facts and of the Case

Justin Swartz filed for disability and disability insurance benefits, alleging disability due to a learning disability, undetermined neurological function loss of his right side, worsening sensation loss and immobility of his right leg, numbness and tingling in his right arm, lower back pain, elevated white blood cell count, social anxiety, and migraines. (Tr. 68).  Swartz was 33 years old at the time of his alleged onset of disability, had at least a high school education, and had past relevant work as an automotive technician. (Tr. 31-33).

The medical record regarding Swartz's impairments revealed that Swartz treated for his complaints of right leg pain and weakness, as well as lower back pain. Treatment records from November of 2018 indicate that Swartz reported "issues with low back and legs" to the Sadler Health Center. (Tr. 462). An examination revealed that his right lower extremity was weaker than his left. (*Id.*). Swartz was diagnosed with polyarthralgia and lumbago with sciatica and was referred to orthopedic surgery. (Tr. 463-64). One month later, Swartz treated at Sadler for a follow up for his knee injury, which he reported he sustained when he hit his knee on the side of car trailer. (Tr. 458). It was noted that his swelling and pain had decreased since his initial visit a few weeks prior. (*Id.*).

Swartz underwent an x-ray of his lumbar spine in January of 2019, which revealed normal findings. (Tr. 396). Around this time, he began physical therapy at Select Physical Therapy. At his initial evaluation, Swartz reported a history of a back injury and fracture. (Tr. 327).[2] He

---

[2] On this same form, Swartz checked "no" for a history of headaches. (Tr. 327).

complained of right leg and lumbar spine pain, reporting that he injured his back shoveling snow, and his right leg had "been bothering him for his entire life." (Tr. 330). An examination revealed a severe antalgic gait. (Tr. 331). Treatment notes indicated that his knee pain was consistent with patellar tendonitis. (*Id.*). At a visit later in January, the clinician noted that Swartz reported pain and soreness after working on a friend's car for several hours the day prior. (Tr. 340). However, his overall condition was improving, in that Swartz reported an ability to twist better and that his pain was improving. (*Id.*). Around this same time, Swartz treated at the Orthopedic Institute of Pennsylvania ("OIP") for his low back and leg pain. (Tr. 405). He reported back pain for five years and pain in his leg for 12 years. (*Id.*). On examination, Swartz was able to ambulate well with no assistive device, had no problem with extension, flexion, or rotation, and had no pain or limitation with hip and knee range of motion. (*Id.*). He received a steroid injection in February, at which time he reported walking with a cane. (Tr. 403).

Physical therapy notes from February revealed that while Swartz reported increased pain at times—such as the day after he had crawled

under his house or when he walked home after his truck got stuck in snow—he showed overall improvements in strength and range of motion, and his nerve irritation improved.  (Tr. 352, 356, 360, 363, 370).  In March, Swartz reported working on a car for several hours the day prior.  (Tr. 376).  Swartz ultimately discontinued physical therapy treatment in March "due to physician direction."  (Tr. 384).

Imaging of Swartz's lumbar spine and right knee from March of 2019 showed only mild degenerative changes.  (Tr. 397, 399).  Around this time, he reported difficulty walking and weakness, as well as paresthesia in his leg, at OIP.  (Tr. 407).  However, during an examination, Swartz walked with no assistive device and had no gait pattern abnormality.  (*Id*).  Swartz made similar reports of pain and weakness, as well as right leg swelling, to his provider at UPMC Pinnacle in March.  (Tr. 434).  At this visit, it was also noted that Swartz reported headaches.  (Tr. 435).  In April, Swartz told his provider at UPMC that his right leg was "basically useless," and it was noted he was using a brace and a cane and had not had an injection since February.  (Tr. 437).  Around this time, Swartz underwent an EMG study, which revealed "no

electrodiagnostic evidence of a generalized neuropathy or radiculopathy affecting the right lower extremity." (Tr. 505). Treatment notes from this time reveal that Swartz continued to report pain and stated that he "cannot use his right leg." (Tr. 421). His provider ordered a brain and cervical MRI to rule out a central pathology. (Tr. 425).

At a follow up appointment in July, Swartz reported experiencing episodes of his leg giving out. (Tr. 494). It was noted that the MRI of his brain was unremarkable, and the MRI of his cervical spine showed early degenerative changes. (*Id.*). His gait was normal on examination. (Tr. 496). Swartz's provider ordered an MRI of his thoracic spine, although it was noted that the provider did not think his pain was neurological. (Tr. 497). At a visit to UPMC in September, Swartz reported getting very fatigued with exercise such that he needed two to three days to recover. (Tr. 447).

Swartz treated at Sadler in March of 2020, at which time he reported that physical therapy did not help him, and that he experienced a reaction after his last injection. (Tr. 453). He was referred to pain medicine, as it was noted he had already seen orthopedics and a

neurologist. (Tr. 454). Imaging from this time consisting of MRIs of his knee, as well as lumbar, cervical, and thoracic spine, indicated only mild degenerative changes. (Tr. 472-75).

In February of 2021, Swartz presented to the UPMC clinic for an initial evaluation of his chronic pain. (Tr. 480). He reported daily, constant pain worsened by prolonged standing, walking, bending, and twisting. (*Id.*). He complained that his pain interfered with his daily functioning, including his sleep, activities of daily living, and ability to work. (*Id.*). A physical examination revealed a negative straight leg raise test, pain with flexion and extension, decreased lumbar range of motion, and a somewhat antalgic gait with a cane. (Tr. 485). Swartz was scheduled for an injection and advised to do a home-based exercise program. (Tr. 486). At a follow up visit in August, it was noted that Swartz remained symptomatic despite imaging being largely unremarkable, and that he was supporting himself with social security funds he received for taking care of his mother. (Tr. 476). The provider noted that the physical examination performed was unreliable "due to poor effort[,]" and that the examination was suspicious for conversion

7

disorder, as Swartz was able to perform some movements at times but would exhibit weakness in that same extremity at other times. (Tr. 477).

Swartz underwent a mental status evaluation with Dr. Kathleen Ledermann, Psy.D., in November of 2021. (Tr. 567-73). Swartz reported no history of psychiatric treatment and further reported his medical history, including his issues with his right leg and back, as well as migraines. (Tr. 568). Swartz's mental status findings were largely normal, and Dr. Ledermann opined that Swartz had no limitations in his ability to understand, remember, and carry out instructions, mild limitations in interacting with others due to his social anxiety, and unspecified concentration limitations due to his physical impairments. (Tr. 571-72).

At a visit to UPMC in April of 2022, a provider noted that Swartz seemed to be "exaggerating" his symptoms and his examination was inconsistent. (Tr. 615). Specifically, the physician noted that he was able to lift his right arm similar to his left, but that at other times, he held his right arm against his body as if it was weak. (Tr. 616). The physician further noted that while Swartz's strength in his lower extremities was

normal and equal with no weakness, Swartz dragged his leg and used a cane when ambulating.  (*Id.*).  The provider stated that the "[m]otor examination is therefore suspicious for conversion disorder." (*Id.*).

Swartz underwent an internal medicine examination with Dr. Ahmed Kneifati, M.D., in May of 2022.  (Tr. 630-39).  Swartz reported pain in his right leg and knee, lower back pain, and a history of migraine headaches.  (Tr. 630).  He stated that he cooked, cleaned, did laundry, shopped, performed personal care and engaged in social media activities. (Tr. 631).  An examination revealed a widened gait with shortened steps; difficulty walking on his heels and toes; negative straight leg testing bilaterally; stable joints; 5/5 strength in his upper and lower extremities; and intact hand and finger dexterity.  (Tr. 631-32).  Dr. Kneifati opined that Swartz could occasionally lift and carry up to ten pounds; could sit for five hours, stand for three hours, and walk for two hours in an eight-hour workday; required a cane to ambulate; could never balance or climb ladders, ropes, and scaffolds; and should be exposed to only quiet (library) level noise.  (Tr. 634-38).

It is against the backdrop of this record that an ALJ held a hearing on Swartz's disability application on March 22, 2023. (Tr. 40-65). Swartz and a Vocational Expert both appeared and testified at this hearing. (*Id.*). Following this hearing, on April 13, 2023, the ALJ issued a decision denying Swartz's application for disability benefits. (Tr. 14-39). The ALJ first concluded that Swartz had not engaged in substantial gainful activity since his alleged onset date of November 2, 2018. (Tr. 19). At Step 2 of the sequential analysis that governs disability claims, the ALJ found that Swartz's degenerative disc disease was a severe impairment. (*Id.*). The ALJ further found that Swartz's migraine headaches, as well as other impairments, were nonsevere. (Tr. 19-21). At Step 3, the ALJ concluded that none of these impairments met or equaled the severity of a listed impairment under the Commissioner's regulations. (Tr. 23).

Between Steps 3 and 4, the ALJ then concluded that Swartz:

[H]a[d] the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except that he is capable of standing and/or walking for two (2) hours in an eight (8) hour workday. The claimant is capable of performing occasional postural movements, but never climbing of ladders, ropes or scaffolds. The claimant must avoid concentrated exposure to extreme cold, wetness, vibration, dangerous machinery and unprotected heights.

(Tr. 23-24).

In reaching this RFC determination, the ALJ considered the objective medical record detailed above, the medical opinion evidence, and Swartz's reported symptoms. With respect to the medical opinion evidence, the ALJ considered Dr. Kneifati's May 2022 opinion and found it partially persuasive. (Tr. 30-31). The ALJ agreed with certain limitations in this opinion, such as the postural, environmental, and sitting, standing, and walking limitations. (Tr. 30). However, the ALJ found that other limitations, such as the carrying and lifting, use of foot controls, and the necessity of a cane to ambulate were not supported by the extensive normal neurological findings in the record. (*Id.*). The ALJ further noted that these limitations were not consistent with the notations in the record concerning Swartz exaggerating his symptoms and his failure to continue certain treatments, such as physical therapy and injections. (*Id.*).

The ALJ also considered the opinions of the state agency consulting providers, Dr. Raymundo and Dr. Arnold, and found these opinions persuasive to the extent they were consistent with the RFC assessment.

11

(Tr. 29-30). In November of 2021, Dr. Raymundo reviewed the record and opined that Swartz could perform a range of light work. (Tr. 72-75). Dr. Arnold reached a similar conclusion on reconsideration in June of 2022. (Tr. 83-86). The ALJ found these opinions partially persuasive, in that the limitation to light work was consistent with and supported by the overall medical evidence showing the normal neurological examinations during the relevant period, Swartz's provider's notation that he was exaggerating his symptoms, his failure to continue treatment, and the consultative examination findings of normal strength and no sensory deficits. (Tr. 29-30).

With respect to Swartz's symptoms, the ALJ found that Swartz's statements concerning the intensity, persistence, and limiting effects of his impairments were not entirely consistent with the medical evidence. (Tr. 24-25). Swartz testified that he lived with his mother, who supported him financially. (Tr. 44-45). He reported that he stopped working due to his impairments that affected the right side of his body, including his right upper and lower extremities, and that he needed a cane to ambulate. (Tr. 46-48). Regarding medications, he testified that he

stopped receiving injections because he had an adverse reaction, and that he could not take opioids because of his gastrointestinal issues. (Tr. 50). With respect to his physical limitations, Swartz testified that he had difficulty rising from a chair, could not squat, and could not stand or walk without a cane. (Tr. 53-54). He further testified that he napped four times per day for two hours at a time. (Tr. 55). While he reported doing some household chores, he stated that his mother helped him. (Tr. 56).

The ALJ ultimately found Swartz's testimony to be inconsistent with the objective clinical findings. (Tr. 25-29). The ALJ detailed the medical records, including Swartz's subjective complaints of worsening symptoms throughout the relevant period. (*Id.*). The ALJ also noted the physical therapy treatment records which indicated Swartz was shoveling snow, working on cars, and crawling under his house. (Tr. 25). The ALJ remarked that the physical therapy treatment records indicated improvement in early 2019 prior to Swartz's discharge. (*Id.*). The ALJ detailed the imaging during the alleged disability period, highlighting the mild degenerative changes and otherwise unremarkable findings. (Tr. 25-27). The ALJ also noted the providers' comments that Swartz

13

appeared to be exaggerating his symptoms, in that he continued to complain of worsening symptoms that did not correlate with his physical examination findings. (Tr. 26-27). Ultimately, the ALJ concluded that the medical record did not support Swartz's allegations of disabling limitations. (Tr. 28).

Having made these findings, the ALJ found at Step 4 that Swartz was unable to perform his past work but found at Step 5 that he could perform the occupations of an electrical accessories assembler, conveyor line bakery worker, small products assembler, table worker, final assembler, and food and beverage order clerk. (Tr. 33). Accordingly, the ALJ found that Swartz had not met the stringent standard prescribed for disability benefits and denied his claim. (*Id.*).

This appeal followed. On appeal, Swartz argues that the ALJ's RFC limitations and his consideration of Swartz's subjective symptoms is not supported by substantial evidence. This case is fully briefed and is therefore ripe for resolution. For the reasons set forth below, we will affirm the decision of the Commissioner.

## III.  Discussion

### A. Substantial Evidence Review – the Role of this Court

This Court's review of the Commissioner's decision to deny benefits is limited to the question of whether the findings of the final decision-maker are supported by substantial evidence in the record.  *See* 42 U.S.C. §405(g); *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 200 (3d Cir. 2008); *Ficca v. Astrue*, 901 F. Supp. 2d 533, 536 (M.D. Pa. 2012). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).  Substantial evidence means less than a preponderance of the evidence but more than a mere scintilla. *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

A single piece of evidence is not substantial evidence if the ALJ "ignores, or fails to resolve, a conflict created by countervailing evidence." *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993) (quoting *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983)) (internal quotations omitted).  However, where there has been an adequately developed

15

factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's decision] from being supported by substantial evidence." *Consolo v. Fed. Maritime Comm'n*, 383 U.S. 607, 620 (1966). The court must "scrutinize the record as a whole" to determine if the decision is supported by substantial evidence. *Leslie v. Barnhart*, 304 F. Supp.2d 623, 627 (M.D. Pa. 2003).

The Supreme Court has explained the limited scope of our review, noting that "[substantial evidence] means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). Under this standard, we must look to the existing administrative record to determine if there is "'sufficient evidence' to support the agency's factual determinations." *Id.* Thus, the question before us is not whether the claimant is disabled, but rather whether the Commissioner's finding that he or she is not disabled is supported by substantial evidence and was based upon a correct application of the law. *See Arnold v. Colvin*,

16

No. 3:12-CV-02417, 2014 WL 940205, at *1 (M.D. Pa. Mar. 11, 2014) ("[I]t has been held that an ALJ's errors of law denote a lack of substantial evidence") (alterations omitted); *Burton v. Schweiker*, 512 F. Supp. 913, 914 (W.D. Pa. 1981) ("The Secretary's determination as to the status of a claim requires the correct application of the law to the facts"); *see also Wright v. Sullivan*, 900 F.2d 675, 678 (3d Cir. 1990) (noting that the scope of review on legal matters is plenary); *Ficca*, 901 F. Supp. 2d at 536 ("[T]he court has plenary review of all legal issues . . . .").

When conducting this review, we must remain mindful that "we must not substitute our own judgment for that of the fact finder." *Zirnsak v. Colvin*, 777 F.3d 607, 611 (3d Cir. 2014) (citing *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005)).  Thus, we cannot re-weigh the evidence. Instead, we must determine whether there is substantial evidence to support the ALJ's findings.  In doing so, we must also determine whether the ALJ's decision meets the burden of articulation necessary to enable judicial review; that is, the ALJ must articulate the reasons for his decision.  *Burnett v. Comm'r of Soc. Sec. Admin.*, 220 F.3d 112, 119 (3d Cir. 2000).  This does not require the ALJ to use "magic" words, but

17

rather the ALJ must discuss the evidence and explain the reasoning behind his or her decision with more than just conclusory statements. *See Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 504 (3d Cir. 2009) (citations omitted). Ultimately, the ALJ's decision must be accompanied by "a clear and satisfactory explication of the basis on which it rests." *Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir. 1981).

**B.** **Initial Burdens of Proof, Persuasion, and Articulation for the ALJ**

To receive disability benefits under the Social Security Act, a claimant must show that he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A); 42 U.S.C. §1382c(a)(3)(A); *see also* 20 C.F.R. §§404.1505(a), 416.905(a). This requires a claimant to show a severe physical or mental impairment that precludes him or her from engaging in previous work or "any other substantial gainful work which exists in the national economy." 42 U.S.C. §423(d)(2)(A); 42 U.S.C. §1382c(a)(3)(B); 20 C.F.R. §§404.1505(a), 416.905(a). To receive benefits

under Title II of the Social Security Act, a claimant must show that he or she is under retirement age, contributed to the insurance program, and became disabled prior to the date on which he or she was last insured. 42 U.S.C. §423(a); 20 C.F.R. §404.131(a).

In making this determination, the ALJ follows a five-step evaluation. 20 C.F.R. §§404.1520(a), 416.920(a). The ALJ must sequentially determine whether the claimant: (1) is engaged in substantial gainful activity; (2) has a severe impairment; (3) has a severe impairment that meets or equals a listed impairment; (4) is able to do his or her past relevant work; and (5) is able to do any other work, considering his or her age, education, work experience and residual functional capacity ("RFC"). 20 C.F.R. §§404.1520(a)(4), 416.920(a)(4).

Between Steps 3 and 4, the ALJ must also determine the claimant's residual functional capacity (RFC). RFC is defined as "that which an individual is still able to do despite the limitations caused by his or her impairment(s)." *Burnett*, 220 F.3d at 121 (citations omitted); *see also* 20 C.F.R. § 404.1545(a)(1). In making this assessment, the ALJ must consider all the claimant's medically determinable impairments,

including any non-severe impairments identified by the ALJ at step two of his or her analysis.  20 C.F.R. §§404.1545(a)(2), 416.945(a)(2).  Our review of the ALJ's determination of the plaintiff's RFC is deferential, and that determination will not be set aside if it is supported by substantial evidence.  *Burns v. Barnhart,* 312 F.3d 113, 129 (3d Cir. 2002).

The claimant bears the burden at Steps 1 through 4 to show a medically determinable impairment that prevents him or her from engaging in any past relevant work.  *Mason*, 994 F.2d at 1064.  If met, the burden then shifts to the Commissioner to show at Step 5 that there are jobs in significant numbers in the national economy that the claimant can perform consistent with the claimant's RFC, age, education, and work experience. 20 C.F.R. §§404.1512(f), 416.912(f); *Mason*, 994 F.2d at 1064.

With respect to the RFC determination, courts have followed different paths when considering the impact of medical opinion evidence on this determination.  While some courts emphasize the necessity of medical opinion evidence to craft a claimant's RFC, *see Biller v. Acting*

20

*Comm'r of Soc. Sec.,* 962 F. Supp. 2d 761, 778–79 (W.D. Pa. 2013), other courts have taken the approach that "[t]here is no legal requirement that a physician have made the particular findings that an ALJ adopts in the course of determining an RFC." *Titterington v. Barnhart*, 174 F. App'x 6, 11 (3d Cir. 2006). Additionally, in cases that involve no credible medical opinion evidence, courts have held that "the proposition that an ALJ must always base his RFC on a medical opinion from a physician is misguided." *Cummings v. Colvin*, 129 F. Supp. 3d 209, 214–15 (W.D. Pa. 2015).

Given these differing approaches, we must evaluate the factual context underlying an ALJ's decision. Cases that emphasize the importance of medical opinion support for an RFC assessment typically arise in the factual setting where well-supported medical sources have found limitations to support a disability claim, but an ALJ has rejected the medical opinion based upon an assessment of other evidence. *Biller*, 962 F. Supp. 2d at 778–79. These cases simply restate the notion that medical opinions are entitled to careful consideration when making a disability determination. On the other hand, when no medical opinion

supports a disability finding or when an ALJ relies upon other evidence to fashion an RFC, courts have routinely sustained the ALJ's exercise of independent judgment based upon all the facts and evidence. *See Titterington,* 174 F. App'x 6; *Cummings,* 129 F. Supp. 3d at 214–15. Ultimately, it is our task to determine, considering the entire record, whether the RFC determination is supported by substantial evidence. *Burns,* 312 F.3d 113.

## C. Legal Benchmarks for the ALJ's Assessment of a Claimant's Alleged Symptoms

When evaluating lay testimony regarding a claimant's reported degree of pain and disability, the ALJ must make credibility determinations. *See Diaz v. Comm'r,* 577 F.3d 500, 506 (3d Cir. 2009). Our review of those determinations is deferential. *Id.* However, it is incumbent upon the ALJ to "specifically identify and explain what evidence he found not credible and why he found it not credible." *Zirnsak v. Colvin*, 777 F.3d 607, 612 (3d Cir. 2014) (citations omitted). An ALJ should give great weight to a claimant's testimony "only when it is supported by competent medical evidence." *McKean v. Colvin*, 150 F. Supp. 3d 406, 415–16 (M.D. Pa. 2015) (citations omitted). As the Third

Circuit has noted, while "statements of the individual concerning his or her symptoms must be carefully considered, the ALJ is not required to credit them." *Chandler v. Comm'r of Soc. Sec.,* 667 F.3d 356, 363 (3d. Cir. 2011) (referencing 20 C.F.R. §404.1529(a) ("statements about your pain or other symptoms will not alone establish that you are disabled").

The Social Security Rulings and Regulations provide a framework for evaluating the severity of a claimant's reported symptoms. 20 C.F.R. §§ 404.1529, 416.929; SSR 16–3p. Thus, the ALJ must follow a two-step process: first, the ALJ must determine whether a medically determinable impairment could cause the symptoms alleged; and second, the ALJ must evaluate the alleged symptoms considering the entire administrative record. SSR 16-3p.

Symptoms such as pain or fatigue will be considered to affect a claimant's ability to perform work activities only if medical signs or laboratory findings establish the presence of a medically determinable impairment that could reasonably be expected to produce the alleged symptoms. 20 C.F.R. §§ 404.1529(b), 416.929(b); SSR 16–3p. During the second step of this assessment, the ALJ must determine whether the

23

claimant's statements regarding the intensity, persistence, or limiting effects of his or her symptoms are substantiated considering the entire case record. 20 C.F.R. § 404.1529(c), 416.929(c); SSR 16–3p. This includes, but is not limited to, medical signs and laboratory findings; diagnoses; medical opinions provided by treating or examining sources and other medical sources; and information regarding the claimant's symptoms and how they affect his or her ability to work. 20 C.F.R. § 404.1529(c), 416.929(c); SSR 16–3p.

The Social Security Administration recognizes that individuals may be limited by their symptoms to a greater or lesser extent than other individuals with the same medical impairments, signs, and laboratory findings. SSR 16–3p. Thus, to assist in the evaluation of a claimant's subjective symptoms, the Social Security Regulations set forth seven factors that may be relevant to the assessment of the claimant's alleged symptoms. 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3). These factors include: the claimant's daily activities; the "location, duration, frequency, and intensity" of the claimant's pain or symptoms; the type, dosage, and effectiveness of medications; treatment other than medications; and

24

other factors regarding the claimant's functional limitations.  20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3).

### D. The ALJ's Decision is Supported by Substantial Evidence.

Our review of the ALJ's decision denying an application for benefits is significantly deferential.  Our task is simply to determine whether the ALJ's decision is supported by substantial evidence in the record; that is "only— 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Biestek*, 139 S. Ct. at 1154.  Judged against this deferential standard of review, we conclude that substantial evidence supported the ALJ's decision in this case.

Swartz first challenges the ALJ's RFC findings, arguing that the ALJ failed to consider Swartz's migraine headaches and his need to lie down during the day.  (Doc. 16 at 9).  Swartz alleged disability due to migraine headaches and reported the same during his mental status evaluation with Dr. Ledermann and his internal medicine examination with Dr. Kneifati.  (Tr. 68, 568, 630).  However, during the relevant period, there are only three treatment records that even mention a report of headaches, and those records indicate Swartz complained of

25

intermittent headaches.  (Tr. 434-35, 439, 615).  Additionally, certain records indicate that Swartz denied headaches.  (Tr. 327, 423, 500).  The ALJ considered these findings in determining that Swartz's migraines were nonsevere, pointing to the limited records in which Swartz complained of headaches and the lack of treatment with any medication or specialty provider for his headaches.  (Tr. 19-20).  The ALJ addressed Swartz's reports of migraines but ultimately found that the record did not support limitations from this nonsevere impairment.  Accordingly, the ALJ was not required to include any such limitations in the RFC.  *See Rutherford*, 399 F.3d at 554.

Similarly, the ALJ considered Swartz's testimony that he naps during the day and has difficulty sleeping.  (Tr. 24).  Ultimately, the ALJ did not find Swartz's testimony to be consistent with the objective medical evidence.  (Tr. 24-25).  Additionally, the treatment records document both complaints of sleep disturbance and fatigue, as well as visits where Swartz disclaimed any sleep disturbance or fatigue.  (*Compare* Tr. 424 (documenting no sleep disturbance but positive for fatigue) *with* Tr. 444-45 (reporting sleep disturbance and difficulty

sleeping but no fatigue)). The record is also devoid of any indication that Swartz reported to his providers that he needed to nap during the day.

It is well established that "the claimant bears the burden to develop the record regarding his or her disability." *Brown v. Comm'r of Soc. Sec.*, 2020 WL 1244186, at *3 (E.D. Pa. Mar. 16, 2020) (citing *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Rutherford*, 399 F.3d at 551). Here, Swartz failed to provide any objective evidence other than his own testimony that he suffered from limitations from his migraines or that he needed to lie down during the day. The ALJ considered Swartz's complaints but ultimately found that, considered against the objective medical evidence, he was not as disabled as he alleged. Thus, we conclude that the ALJ's RFC determination is supported by substantial evidence.

Swartz further contends that the ALJ improperly considered his noncompliance with treatment, activities of daily living, and his ability to care for his elderly mother. (Doc. 16 at 12-17). Swartz also argues that the ALJ failed to consider his consistent work history prior to the alleged disability period. (*Id.* at 12-13). First, we note that the ALJ is permitted

27

to consider a claimant's noncompliance with treatment as well as activities of daily living when assessing a claimant's credibility. *See Vega v. Comm'r of Soc. Sec.*, 358 F. App'x 372, 375 (3d Cir. 2009) (reasoning that and ALJ's reliance on noncompliance with treatment to assess a claimant's credibility did not require a remand) (nonprecedential); *Russo v. Astrue*, 421 F. App'x 184, 190 (3d Cir. 2011) (finding no error where the ALJ considered the claimant's activities of daily living and found the claimant not entirely credible) (nonprecedential). Here, the ALJ noted that Swartz discontinued physical therapy and injections even though the record indicated these treatments were improving his symptoms. The ALJ further noted that Swartz continued to work on cars during the relevant period. Accordingly, the ALJ was permitted to consider these issues when assessing Swartz's credibility and ultimately concluding that Swartz was not as limited as he alleged.

Similarly, while the plaintiff contends that the ALJ erred in considering the fact that he cared for his mother, this was just one consideration among Swartz's reported activities of daily living that the ALJ considered. (Tr. 28). Indeed, the ALJ mentioned that Swartz cared

28

for his mother but further considered other activities of daily living, such as performing household chores, working on cars, leaving the home to shop, and driving. (*Id.*). The ALJ ultimately determined that all of Swartz's activities of daily living, taken together, were not consistent with Swartz's allegations of disabling impairments. (*Id.*). Therefore, these considerations do not require a remand.

Finally, Swartz argues that the ALJ should have considered his prior consistent work history as a factor favorable to his credibility. (Doc. 16 at 12-13). But in our view, this is simply another argument against the ALJ's credibility determinations and ultimate conclusion that Swartz's testimony was not supported by the record evidence. *See e.g.*, *Thompson v. Astrue*, 2010 WL 3661530, at *4 (W.D. Pa. Sept. 20, 2010) ("[A] claimant's work history alone is not dispositive of the question of his credibility, and an ALJ is not required to equate a long work history with enhanced credibility."); *Gebhardt v. Colvin*, 2016 WL 827156, at *8 (M.D. Pa. Mar. 3, 2016) (concluding that the ALJ's failure to credit the claimant's work history was not a basis for remand). While Swartz challenges the ALJ's credibility determination, we are not permitted at

29

this stage to reweigh the evidence, *Chandler*, 667 F.3d at 359, and instead must simply determine whether the ALJ's decision was supported by "substantial evidence." *Biestek*, 139 S. Ct. at 1154. Here, we conclude that the ALJ's consideration of Swartz's subjective symptoms is supported by substantial evidence.

Given that the ALJ considered all the evidence and adequately explained his decision for including or discounting certain limitations as established by the evidence, we find no error with the decision. Therefore, under the deferential standard of review that applies to appeals of Social Security disability determinations, we conclude that substantial evidence supported the ALJ's evaluation of this case, and this decision should be affirmed.

**IV.    Conclusion**

For the foregoing reasons, the decision of the Commissioner in this case will be affirmed, and the plaintiff's appeal denied.

An appropriate order follows.

Submitted this 6th day of May 2025.


*s/ Daryl F. Bloom*
Daryl F. Bloom
Chief United States Magistrate Judge